UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

LI WANG,

                              Plaintiff,

                  -against-

HAITOU GLOBAL (CAYMAN) INC., HI2 GP
LLC, HI2 INVESTMENT MANAGEMENT, LLC,
JINLONG (JERRY) WANG, CARLOHA INC.,
AND LIANG LONG,

                            Defendants.

------------------------------------------------------------- x

Case No. _____

**COMPLAINT AND
JURY DEMAND**

        Plaintiff Li Wang ("Plaintiff"), by and through her undersigned attorneys,

Allegaert Berger & Vogel LLP, as and for her Complaint against defendants Haitou Global

(Cayman) Inc. ("Haitou Global"), Hi2 GP LLC ("Hi2 GP"), Hi2 Investment Management, LLC

("Hi2 Manager"), Jinlong (Jerry) Wang ("J. Wang"), Carloha Inc. ("Carloha"), and Liang Long

("L. Long", and together with Haitou Global, Hi2 GP, Hi2 Manager, J. Wang, and Carloha,

"Defendants"), states upon personal knowledge with respect to her own acts and status, and upon

information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

        1.     This action for securities fraud and related relief arises from Defendants'

fraudulent scheme to steal $1.4 million from Plaintiff.  Defendants perpetrated this scheme by

inducing Plaintiff to invest in so-called "Platform Notes" issued by Haitou Global and

purportedly backed by loans made by Haitou Global to Carloha, by means of numerous false

representations contained in marketing materials, offering materials, and in the Platform Notes

themselves.  Once Plaintiff had relied on and invested in these funds, and after myriad red flags

arose concerning the integrity of Defendants and their conduct, Defendants engaged in an intricate game of misdirection and finger-pointing among them when pressed by Plaintiff for answers to simple questions, including most basically, "Where is my money?"

2.      The false statements made by Defendants were not subtle, nuanced or open to interpretation.  To the contrary, Defendants' false statements were brazen and explicit.  These included, without limitation, false statements in marketing and offering materials that:

        a.      The Platform Notes were registered with the United Sates Securities and Exchange Commission (the "SEC"), when in fact they were not;

        b.      The funds raised would be maintained separately under each corresponding "Series LLC" when in reality no such structure was established and Plaintiff's funds were mismanaged and commingled; and

        c.      The national law firm Manatt, Phelps & Phillips, LLP ("Manatt") was retained for the preparation of the offering materials, when in fact Manatt was not.

3.      Defendants perpetuated their fraud by making further factual misstatements regarding the status of Plaintiff's investment and her ability to recover it.  Once the maturity dates of the Platform Notes had expired without repayment, Defendants shifted their narrative, revealing a web of deceit, mismanagement, and contradictory statements between and among them.

4.      Although the SEC has to date announced settled charges against Hi2 Manager for violation of various SEC rules designed to protect advisory clients from the misuse or misappropriation of their assets, those charges are but the tip of the iceberg of the fraudulent conduct that Defendants have perpetrated and continue to perpetrate as described below.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa), as the claims asserted herein arise under Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)), Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5(b)), and Section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78t(a)).

6.      This Court also has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

7.      This Court has personal jurisdiction over Defendants because they maintain their principal places of business in, and/or are citizens of, the State of New York, conduct substantial business within this District, and have committed tortious acts within this District.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District, and because Defendants reside, transact business, or are otherwise subject to personal jurisdiction in this District.

## THE PARTIES

9.      Plaintiff is an individual and a citizen of the State of Michigan.

10.     Hi2 Manager is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 747 Third Avenue, Suite 2601, New York, New York 10017.  The members of Hi2 Manager are citizens of New York and Delaware.  Hi2 Manager was registered with the SEC as an investment adviser between May 2016 and July 30, 2024.

3

11.    Hi2 Manager manages various funds organized by J. Wang, including Defendants Haitou Global and Hi2 GP, as well as other funds (together, the "Hi2 Funds"; and collectively, with Hi2 Manager, "Hi2").

12.    Hi2 GP is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 747 Third Avenue, Suite 2601, New York, New York 10017.  The members of Hi2 Manager are citizens of New York and Delaware.  Hi2 GP is a fund managed by Hi2 Manager and J. Wang.

13.    Defendant J. Wang is an individual and a citizen of the State of New York.  He is the founder, Chief Executive Officer and Manager of Hi2.  In this capacity, he exercises complete control over Hi2 Manager and all Hi2 Funds' investment decisions.

14.    Defendant Haitou Global is a corporation organized under the laws of the Cayman Islands, with its principal place of business at 747 Third Avenue, Suite 2601, New York, New York 10017.

15.    Defendant Carloha is a corporation organized under the laws of the State of New York, with its principal place of business at 5 Penn Plaza, Room 2370, New York, New York 10001.  Carloha is a used-car retailer that purchases used cars from the U.S., transports them to Nigeria, refurbishes and then sells these used cars to dealerships or directly to consumers.

16.    Defendant L. Long is an individual and a citizen of the State of New York.  L. Long is the principal and Chief Executive Officer of Carloha.

## FACTUAL BACKGROUND

**A.    Hi2's Structures and the Marketing of Its Funds**

17.    Hi2 Manager operates as the manager and custodian for Hi2 Funds.  Hi2 Funds issued the so-called "Platform Notes" to investors, including Plaintiff.

18.     The Platform Notes are borrower payment-dependent notes.  That is, the proceeds of the Platform Notes are used to make loans to borrowers, which are businesses seeking to borrow money through Hi2 (the "Borrowers").

19.     In advance of her own investment, Hi2 provided various marketing materials to Plaintiff (the "Marketing Materials").  These Marketing Materials, included without limitation, a certain presentation or "deck" which stressed Hi2's robust risk management strategies, including its adherence to strict due diligence with respect to and requirements for collateral, pledges, and guarantees from the Borrowers.  The Marketing Materials also stated that Hi2 would deliver monthly reports to the investors.

20.     According to the Marketing Materials and other transaction documents provided by Hi2 to Plaintiff, the Platform Notes were marketed to investors, including Plaintiff, as secure investment opportunities that were SEC-registered, with low volatility and stable returns.

21.     Hi2 vigorously marketed the Platform Notes to investors worldwide through various methods and means, including by hosting in-person events in New York and by forming groups of investors and potential investors on WeChat, a Chinese messaging and social media "app" accessible in the U.S.  Hi2 also has its own online platform available as both a website and mobile app (the "Hi2 Platform"), which each investor can use to log in to his or her "account". Although the usual procedure by which investors would subscribe to Hi2 Funds was for investors to contact an appointed Hi2 investment manager through WeChat, the Hi2 Platform provides a "subscription" button for certain products with standardized terms.  The Hi2 Platform also provides wire transfer information for subscription to Hi2 Funds.

22.     In the Marketing Materials, Hi2 claimed that while accredited investors in the U.S. could invest in the Platform Notes through Hi2 GP, international investors could invest in the Platform Notes through Haitou Global, a Cayman Islands fund.

**B.     Plaintiff's Investment in Hi2 Funds and Carloha's Involvement**

23.     Plaintiff first met J. Wang at an Hi2 event in July 2019, and later that year, Plaintiff began to invest in Hi2's products.  Whenever an Hi2 investment product matured, Hi2 would contact Plaintiff to ask her to continue investing, by rolling over her proceeds from the matured product she had invested in, into other products, and/or to increase her investments, and would discourage her from withdrawing any proceeds or principal that were invested with Hi2. In 2021, J. Wang introduced Carloha and L. Long to Plaintiff, endorsing Carloha as a legitimate, thriving, and trustworthy business.

24.     In or around August 2022, L. Long solicited additional funding and/or loans from Hi2 and J. Wang, and also encouraged Plaintiff to invest further in Hi2 over the course of telephone calls and meetings, by assuring Plaintiff that Carloha was a prosperous business, generating significant revenue for both its operations and its investors.

25.     In October 2022, Plaintiff met with J. Wang at Hi2's New York office and agreed to increase her investments through Hi2 from approximately $300,000 to over $1 million.  J. Wang assured Plaintiff that the entire investment amount would be used for loans to Carloha.

26.     L. Long subsequently thanked Plaintiff for her continued investment in Carloha through Hi2 and informed her that Carloha was generating substantial revenue streams and had secured funding from other sources to fuel further growth.

**C.    The Platform Notes at Issue**

27.    Plaintiff's investments with Hi2 eventually rolled over to $1.4 million in principal, plus applicable interest, consisting of three Platform Notes:

a.    Platform Note titled "Haitou Global (Cayman) Inc. (Series C230531017 LLC)" in the principal amount of $345,000 , Note Number A2023053101000017, Series C0360, with an interest rate of 15%, and a maturity date of May 25, 2024, pursuant to a Subscription Agreement entered into between Series C230531017 LLC of Haitou Global (Cayman) Inc. and Plaintiff on or about June 1, 2023 (the "$345k Platform Note");

b.    Platform Note titled "Haitou Global (Cayman) Inc. (Series C230611001 LLC)" in the principal amount of $155,000 , Note Number B2023061101000001, Series C0360, with an interest rate of 15%, and a maturity date of June 8, 2024, pursuant to a Subscription Agreement entered into between Series C230611001 LLC of Haitou Global (Cayman) Inc. and Plaintiff on or about June 15, 2023 (the "$155k Platform Note"); and

c.    Platform Note titled "Haitou Global (Cayman) Inc. (Series C231205001 LLC)" in the principal amount of $900,000 , Note Number A2023120501000001, Series C0180, with an interest rate of 11%, and a maturity date of June 2, 2024, pursuant to a Subscription Agreement entered into between Series C231205001 LLC of Haitou Global (Cayman) Inc. and Plaintiff on or about December 5, 2023 (the "900k Platform Note".

28.    Prior to entering into Subscription Agreements to purchase the Platform Notes at issue, Hi2 provided Plaintiff with Hi2 Marketing Materials as well as various offering materials (the "Offering Materials"), consisting of each Platform Note, Subscription Agreement, Private Placement Memorandum (the "PPM"), and other subscription documents.  The PPM of the Platform Notes were also available on the Hi2 Platform.

29.    Each Platform Note provides that payments of principal and interest shall be payable "if issuer has received payments on the corresponding underlying advance pursuant to the loan agreement for the underlying loan" (Section 2).  Each Platform Note also provides that "upon request issuer will deliver a report of the underlying loan and the underlying loan payment

history" and that "upon request, the issuer will promptly make available to the payee the expected payment schedule . . . ." (Sections 1 and 2).

30.    To convince Plaintiff to invest, Hi2 has repeatedly emphasized to Plaintiff, over phone calls, messages and its Marketing Materials, that the Platform Notes are the "safest loan products" and are backed up with car inventory as collaterals.

**D.    Defendants' Numerous False Statements in the Marketing Materials and Offering Materials Were Made to Induce Plaintiff to Purchase Hi2's Platform Notes**

31.    In addition to the false statements and representations made to Plaintiff discussed above, Hi2 further induced Plaintiff to invest in the Platform Notes through various false statements in the Marketing Materials and Offering Materials provided to Plaintiff.

32.    The Marketing Materials Hi2 delivered to Plaintiff contain statements that the Platform Notes are registered with the SEC.  However, the Platform Notes sold to Plaintiff were never registered with the SEC.

33.    The Marketing Materials state that collateral, pledges, and guarantees would be required from the Borrowers to provide stable returns for investors.  Yet, given that no repayment has been made to Plaintiff months after the maturity dates of the Platform Notes and that no payment schedule has been addressed by Hi2, it is evident that Hi2 failed to structure the Platform Notes and the underlying loans as described in the Marketing Materials.  This failure is further reflected in the Continuing Guaranty, dated March 6, 2023, among certain Carloha and Hi2 entities, as well as the Security Agreement, also dated March 6, 2023, between Carloha and a certain Hi2 entity. These documents were presumably designed to create security interests for the underlying loans but appear in fact to be deficient in doing so.

34.    The Marketing Materials further state that Hi2 would provide monthly reports to the investors of the Platform Notes.  Yet Plaintiff received reports only sporadically and

inconsistently at best.  J. Wang later admitted during a telephone conversation with Plaintiff that Hi2 had never done any due diligence on the data provided by the Borrowers.

35.     The Offering Materials state that the issuer of each of the Platform Notes is a specific "Series LLC" of Haitou Global.  However, because Haitou Global is a Cayman Islands corporation, no Series LLC could, as a legal matter, have been established under it such that no such Series LLCs were ever in fact established.  Hi2 Manager and J. Wang never intended to properly manage Hi2 Funds pursuant to the series structure with segregated assets for each Platform Note, as conveyed to Plaintiff in the Offering Materials.

36.     The PPM provide that the Borrowers of the underlying loans to the Platform Notes should be "in the business of providing loans to individual and business borrowers residing in the applicable Local Market."  But the underlying Borrower here, Carloha, is not in that business, but in fact, is in the used car business.

37.     The PPM indicates that Manatt was retained to advise in connection with the preparation of the PPM and other subscription documents.  Manatt, however, has expressly denied that it was ever retained for such purposes, making this statement an outright lie.

38.     The Offering Materials fail to disclose any fees that Hi2 is to earn in connection with the Platform Notes; whereas in reality, Hi2 has received such fees.

**E.     Mismanagement of Funds by Hi2 and Carloha's Involvement**

39.     Despite assurances made to Plaintiff that her investments in the Platform Notes would be used solely for loans to Carloha, in or around February 2024, during a telephone conversation with Plaintiff, J. Wang admitted that because another portfolio company, Flashcash, presumably "took Hi2's money and disappeared", all of Plaintiff's investments in the Platform Notes had become at risk of loss.

40.     When Plaintiff questioned how this could be possible, given that her investments were supposedly allocated to Carloha and not Flashcash, J. Wang admitted to mismanaging the Hi2 Funds.  He stated that the Hi2 Funds were not segregated as promised but were instead pooled together with other investments and were all in "one pot."  J. Wang also expressed concern that the SEC might find his management practices fraudulent and problematic.

41.     During these conversations, J. Wang further admitted that the reports previously sent to investors contained fabricated data, falsely portraying that the Hi2 Funds were performing well and meeting their investment objectives.  In reality, the funds were misallocated, and performing poorly.

42.     In addition to these conversations with Plaintiff, J. Wang hosted remote meetings with a larger group of investors, including Plaintiff.  The apparent purpose of these meetings was to delay the consequences of the mismanagement of the Hi2 Funds.  At one point, J. Wang even offered to sell his own equity in Carloha to compensate investors, including Plaintiff, if they were willing to "settle" with him.

43.     J. Wang further claimed that the contracts entered into by the investors with all Hi2 entities no longer mattered at that point, and that it was entirely up to him to decide how, when, and how much will be paid back to each investor.  J. Wang threatened that if investors retained counsel, he would use their money in Hi2 to cover his legal expenses, and that those investors would never be repaid.

44.     In late February 2024, after learning about the issues with Hi2 Funds, Carloha's CEO and principal, L. Long, texted Plaintiff before a scheduled investor meeting advising her "not to push J. Wang too hard."  L. Long stated in his text message to Plaintiff that, as Hi2 owns more than 10% of Carloha's shares (claiming those shares are worth $18 million based on

Carloha's alleged $180 million valuation) and other assets, if investors were willing to give J. Wang another chance in order to prevent Hi2 from going out of business, they could gradually recover their principal and possibly even interest.  Otherwise, all parties would suffer.  L. Long even asked Plaintiff to persuade other investors of this during the meeting, which Plaintiff declined to do.

45.    Also in February 2024, L. Long also assured Plaintiff during a telephone call that there was nothing for Plaintiff to worry about as long as her investments were with Carloha because Carloha is a thriving business and would pay back every single penny.

46.    On or about April 1, 2024, before the maturity dates of her Platform Notes, Plaintiff received a wire transfer of $14,000 from Hi2 GP.  Plaintiff also received an email from J. Wang, purportedly sent to all investors of various Hi2 Funds, explaining that the payment represented 1% of each investor's principal investment amount.  The explanation given for this payment was that this 1% reflected the amount Hi2 Funds received from various Borrowers, without any distinction regarding the format of the supposed Series LLC or linking any specific loans to the Platform Notes issued by Hi2 or Haitou.  Further, J. Wang urged investors to execute an agreement with him in order to participate in the proceeds that he would receive from the purported future sale of part of his shares in Carloha.

47.    Plaintiff, through her undersigned counsel, contacted Hi2's counsel, Manatt, in an effort to investigate the nature and status of these Platform Notes.  Manatt, while acknowledging its representation of certain Hi2 entities, but not J. Wang, stated in writing that the firm had no involvement in the preparation of the Offering Materials of the Platform Notes that Plaintiff had subscribed to, contradicting what was expressly represented in the PPM that Manatt had done so.

48.     On or about April 5, 2024, Manatt confirmed, on behalf of the Hi2 entities, but not on behalf of J. Wang, that despite J. Wang's multiple statements to Plaintiff to the contrary in the preceding months, all of Plaintiff's funds under the Platform Notes were tied to loans made to Carloha under three Promissory Notes (the "Promissory Notes") issued by Carloha to Haitou Global.  These Promissory Notes contained principal amounts, terms, and interest rates that were identical or similar to Plaintiff's Platform Notes, but they included additional service and management fees payable to Haitou Global.

49.     Manatt, on behalf of Hi2, also shared certain Carloha profit and loss statements with Plaintiff through counsel.  J. Wang then claimed to Plaintiff directly that he expected to receive repayments from Carloha on the Promissory Notes based on these Carloha statements. He also assured Plaintiff that Hi2 would transfer such funds to her upon receipt.  He further expressed a firm commitment to repaying Plaintiff in accordance with the terms of the Platform Notes.

50.     To date, neither Hi2 nor J. Wang have ever explained the inconsistency in their positions as to whether Plaintiff's Platform Notes were tied to specific loans to Carloha and would be repaid.

**F.     Defendants Default on the Platform Notes**

51.     The three Platform Notes in which Plaintiff invested each had maturity dates  in May and June 2024.  To date, however, Hi2 and Carloha have failed to make payments to Plaintiff for the principal or interest due thereunder.

52.     On May 24, 2024, less than two hours before the maturity date of the $345k Platform Note, Plaintiff received an email from J. Wang, copying L. Long, attaching a "Request for Extension Letter" from Carloha to Hi2 that was signed by L. Long.  In that letter, Carloha

requested a one-month extension for the loan repayment, stating that Carloha's bank account had been "suspended," but that a new account would be opened soon.

53.    When asked whether Plaintiff could expect repayment of all three Platform Notes in June 2024, J. Wang responded over an email that "Carloha plans to pay off the 3 notes in June."

54.    On June 11, 2024, after the maturity dates of all three Platform Notes had expired, Manatt forwarded to Plaintiff's counsel an "Explanation Letter" from Carloha, which contained largely the same content as had the prior "Request for Extension Letter."  Notably absent from this letter, however, was any timeline stating when the loans would be repaid.  On June 14, 2024, Manatt forwarded yet another "Explanation Letter" from Carloha, this time with the corrected loan amount, stating that the process of opening a new Carloha bank account was taking longer than expected but that Carloha would "do [its] best to pay back all the outstanding loans by June 24, 2024."  Plaintiff then learned directly from L. Long that these Carloha letters forwarded by Hi2 were drafted at and under J. Wang's direction.

55.    From in or around June through August 2024, Carloha repeatedly assured Plaintiff during multiple telephone phone conversations that Carloha had the money and would repay the loan which funds would then be used to repay Plaintiff, each time claiming that it just needed more time.  During those conversations, Carloha also acknowledged that it owed Hi2, and indirectly Hi2's investors, approximately $8 million in total.

56.    On July 8, 2024, Manatt emailed Plaintiff's counsel, stating that "Carloha indicated the $100,000 payment will likely be sent this week.  If received, Haitou will transfer [those funds] to [Plaintiff] in accordance with the [Platform Notes]."  When pressed by

Plaintiff's counsel on the status of this payment, Hi2 then claimed it never received the anticipated payment from Carloha.

57.     On September 10, 2024, Plaintiff's counsel spoke with Carloha's counsel, who advised that "[Carloha doesn't] owe Hi2 money under the notes."  This extraordinary about-face was in direct contravention of Carloha's earlier stated position to the contrary.  L. Long also separately confirmed this revised Carloha position to Plaintiff by telephone.

58.     On October 7, 2024, J. Wang emailed Plaintiff stating that he was transferring to Plaintiff $86,000 from Hi2 GP's account, stating that "Carloha paid back $100,000" and that the amount of $86,000 was "less $14,000 paid in March."  J. Wang did not explain when Carloha repaid the $100,000 and to which Platform Note(s) or to principal or interest this $86,000 payment supposedly related.

59.     To date, other than the $14,000 and $86,000 payments discussed above, Plaintiff has not received any repayment or other consideration under the Platform Notes, which have a combined principal amount of $1.4 million.

**G.    The SEC's Consent Charges Against Hi2 Manager**

60.     On September 10, 2024, the SEC issued an order (the "Order") in its administrative and cease-and-desist proceedings against Hi2 Manager for violations of Sections 206(4)-2 (the "Custody Rule") and 206(4)-7 (the "Compliance Rule") of the Investment Advisers Act of 1940.

61.     In the Order, the SEC found that Hi2 Manager, as custodian for client assets held in seven Hi2 Funds, failed to comply with the Custody Rule.  Specifically, the SEC found that between 2018 and 2023, Hi2 Manager violated the Custody Rule on no fewer than 17 occasions

by failing to distribute annual audited financial statements, and, in some cases, by not obtaining

audits from a PCAOB-registered independent public accountant.

62.     The Order further provides that Hi2 Manager also failed to implement adequate

compliance policies to prevent these violations which was in violation of the Compliance Rule.

63.     The SEC's findings in the Order confirm Hi2 Manager's flagrant disregard of

basic proper management of investors' funds, including Plaintiff's.

**H.     Hi2 GP, Haitou Global, Hi2 Manager and J. Wang are Alter Egos**

64.     Hi2 GP, Haitou Global, and Hi2 Manager were operated as a single business

entity under the complete control of J. Wang, who exercised dominion over all aspects of their

operations from Hi2's office in New York.

65.     J. Wang admitted to Plaintiff that he mismanaged investor assets and that all

funds managed by Hi2 were mixed in "one pot."

66.     Although the issuer of the Plaintiff's Platform Notes is Haitou Global, J. Wang

directed Plaintiff to deposit her funds for the purchase of the Platform Notes to Hi2 GP's bank

account in New York, rather than Haitou Global's account.

67.     The Hi2 entities commingled funds and used the corporate form to perpetrate

fraud on Plaintiff and other investors, misleading them about the true structure and management

of their investments.

## CLAIMS FOR RELIEF

### First Claim for Relief
### Violation of Section 10(b) of Exchange Act (15 U.S.C. § 78j(b)) and
### Rule 10b–5 (17 C.F.R. 240.10b–5(b))
### (against Hi2 and J. Wang)

68.     Plaintiff repeats and realleges each and every allegation set forth in the preceding

paragraphs as if fully set forth herein.

69.    Hi2 and J. Wang carried out a plan, scheme and course of conduct that was intended to and did: (i) deceive investors, including Plaintiff; and (ii) cause Plaintiff and other investors to purchase Platform Notes issued by Hi2 entities.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants took the actions set forth herein.

70.    Hi2 and J. Wang, individually and in concert, directly or indirectly, by use of the means or instrumentalities of interstate commerce or the mails, knowingly and willfully engaged in acts, practices, and a course of business that operated as a fraud and deceit upon Plaintiff in connection with the purchase of the Platform Notes.

71.    Hi2 and J. Wang made untrue statements of material facts and omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.  These misrepresentations and material omissions include, but are not limited to:

      a.    Falsely representing that the Platform Notes were registered with the SEC;

      b.    Falsely representing that the funds raised would be kept separately under each corresponding "Series LLC";

      c.    Falsely representing that proper collateral, pledges, and guarantees were in place to protect investors' funds;

      d.    Falsely representing that Manatt was retained for the preparation of the Offering Materials;

      e.    Falsely representing that the Borrowers would be "in the business of providing loans";

      f.    Falsely representing that monthly reports would be provided to investors;

      g.    Falsely representing that the Hi2 Funds were performing well; and

16

      h.     Failing to disclose material information related to management fees and other fees associated with the investment.

72.     Hi2 and J. Wang acted with scienter, in that they knew, or recklessly disregarded, that the statements and omissions described above were false and misleading, and that such statements would induce Plaintiff and other investors to purchase the Platform Notes.

73.     Plaintiff reasonably relied on Defendants' false statements and omissions in deciding to invest in the Platform Notes.

74.     As a direct and proximate result of Defendants' violations of Section 10(b) of the Exchange Act and Rule 10b-5, Plaintiff has suffered damages, including the loss of her principal investments and applicable interest.

75.     By reason of the foregoing, Plaintiff is entitled to a judgment against Hi2 and J. Wang, jointly and severally, for compensatory damages in an amount to be determined at trial, but in excess of $1.4 million, and punitive damages in an amount to be determined at trial.

<u>**Second Claim for Relief**</u>
**Aiding and Abetting Securities Fraud**
**(against Carloha and L. Long)**

76.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

77.     Hi2 and J. Wang committed securities fraud in violation of Section 10(b) of the Exchange Act and Rule 10b–5, as described in Count Three, by making false statements and omissions in connection with the sale of Platform Notes.

78.     Carloha and L. Long encouraged Plaintiff to increase her investments in the Platform Notes, so that Carloha and L. Long can benefit from the proceeds of Plaintiff's investments.

79.     Carloha and L. Long acted with scienter, knowing or recklessly disregarding that their actions were aiding a fraudulent scheme, by:

      a.    Reassuring Plaintiff that her investments were secure and would be repaid, despite knowing of the mismanagement of funds and financial instability of Hi2 and Carloha;

      b.    Encouraging Plaintiff not to demand immediate repayment, asserting that this would cause further harm and prevent recovery, thereby delaying the detection of the fraud; and

      c.    Falsely representing that Carloha was able to repay the funds pursuant to the terms of the loans, when in fact, Carloha lacked the financial capacity or stability to do so.

80.     L. Long was aware that the funds raised from Plaintiff and other investors were not properly managed, yet actively participated in concealing the mismanagement by falsely reassuring Plaintiff her funds were secure and would be repaid pursuant to the terms of the applicable contracts, despite knowing such statements were false.

81.     L. Long and Carloha's substantial assistance furthered and prolonged the fraud by engaging in multiple deceptive actions to conceal the fraud from Plaintiff, including advising Plaintiff not to push J. Wang to demand repayment, falsely asserting that doing so would harm all parties and jeopardize Plaintiff's chances of recovering their investments.

82.     L. Long and Carloha also specifically reassured Plaintiff that since her investments in the Platform Notes are with Carloha, she had nothing to worry about because Carloha intended to repay every penny.

18

83.     As a direct and proximate result of Carloha and L. Long's substantial assistance to Hi2 and J. Wang's securities fraud, Plaintiff has suffered damages, including the loss of her principal investments and applicable interest.

84.     By reason of the foregoing, Plaintiff is entitled to a judgment against Carloha and L. Long, jointly and severally, for compensatory damages in an amount to be determined at trial, and punitive damages in an amount to be determined at trial.

**Third Claim for Relief**
**Fraudulent Inducement**
**(against Hi2 and J. Wang)**

85.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

86.     Hi2 and J. Wang fraudulently induced Plaintiff to purchase the Platform Notes in the Hi2 Funds through various intentional and reckless misrepresentations, including but not limited to blatant and material misstatements that:

> a.     The Platform Notes were registered with the SEC, when in fact they were not;
>
> b.     The funds raised would be maintained separately under each corresponding "Series LLC" when in reality no such structure was established and Plaintiff's funds were mismanaged and commingled with other Hi2 Funds;
>
> c.     Collateral, pledges, and guarantees would be required from Borrowers to ensure stable returns, but the structuring of these securities was poorly executed, failing to provide the promised protection;

    d.      Manatt was retained for the preparation of the Offering Materials, when in fact Manatt was not;

    e.      The Borrowers would be "in the business of providing loans" as stated in the PPM, when, in reality, Carloha did not engage in such business activities; and

    f.      Monthly reports would be provided to investors, when in fact the reports Plaintiff received were but sporadic and inconsistent.

87.    Hi2 and J. Wang knew these statements and material omissions were false and/or misleading but knowingly sent them to investors to cover up the mismanagement.

88.    Reports provided to Plaintiff prior to her increasing her investments in the Hi2 Funds concerning the Hi2 Funds were fabricated to falsely portray security and positive performance.

89.    Hi2 and J. Wang intended to and did in fact use the misleading Marketing Materials and Offering Materials to induce Plaintiff to subscribe to the Platform Notes. Hi2 and J. Wang's intent to defraud may be inferred from, inter alia, their knowledge and access to information contradicting the misstatements in these Marketing and Offering Materials, and their true motivation was not to protect investor funds, but rather to mismanage investor funds without regard to the supposed structure of Hi2 Funds.

90.    Plaintiff reasonably relied on the information provided to her by Hi2 and J. Wang in the Marketing Materials and Offering Materials to invest in the Platform Notes.

91.    Plaintiff has been damaged by Hi2's and J. Wang's intentional and reckless misconduct, including the factual misstatements and material omissions contained in the Marketing Materials and Offering Materials for each of the Hi2 Funds. Their fraudulent

conduct, as alleged herein, was outrageous, willful, and wanton, perpetrated with an evil motive and a reckless indifference to the rights of Plaintiff and other investors.

92.     By reason of the foregoing, Plaintiff is entitled to a judgment against Hi2 and J. Wang, jointly and severally, for compensatory damages in an amount to be determined at trial, but in excess of $1.4 million, the principal amount of the Platform Notes, and the respective applicable interest, and punitive damages in an amount to be determined at trial.

**Fourth Claim for Relief**
**Aiding and Abetting Fraud**
**(against Carloha and L. Long)**

93.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

94.     Carloha and L. Long knowingly and substantially assisted Hi2 and J. Wang in perpetrating the fraudulent scheme that induced Plaintiff to invest in the Platform Notes. Carloha and L. Long encouraged Plaintiff to increase her investments in the Platform Notes, to enable Carloha and L. Long to benefit from the proceeds of Plaintiff's investments.

95.     L. Long was aware that the funds raised from Plaintiff and other investors were not properly managed, but despite this knowledge, L. Long actively participated in efforts to conceal the mismanagement by reassuring Plaintiff that her funds were secure and would be repaid pursuant to the applicable contracts, knowing these statements were false and knowing that Plaintiff would rely to her detriment on these false statements.

96.     L. Long and Carloha further aided the fraud by advising Plaintiff not to push J. Wang to demand repayment, falsely asserting that doing so would harm all parties and jeopardize Plaintiff's chances of recovering their investments.

97.     L. Long and Carloha also specifically reassured Plaintiff that since her investments in the Platform Notes were with Carloha, she had "nothing to worry about" because Carloha intended to pay back every penny.

98.     By providing such substantial assistance to Hi2 and J. Wang in their fraudulent conduct, Carloha and L. Long are liable for aiding and abetting fraud.

99.     As a direct and proximate result of Carloha and L. Long's actions, Plaintiff has suffered damages, including but not limited to the loss of her principal investments and applicable interest.

100.     By reason of the foregoing, Plaintiff is entitled to a judgment against Carloha and L. Long, jointly and severally, for compensatory damages in an amount to be determined at trial, and punitive damages in an amount to be determined at trial.

**<u>Fifth Claim for Relief</u>**
**Breach of Contract**
**(in the Alternative against Hi2 and J. Wang)**

101.     Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

102.     Plaintiff and Haitou Global entered into binding agreements under the Platform Notes, which set forth terms for repayment of principal and interest.

103.     Plaintiff fulfilled her obligations under the Platform Notes by investing the principal amounts as required.

104.     Carloha and L. Long have represented that repayments were made under the loans corresponding to Plaintiff's Platform Notes.  If such repayments were made, Haitou Global, Hi2 Manager, and J. Wang, as alter egos, are contractually obligated to pay these amounts to Plaintiff under the terms of the Platform Notes.

105.    Haitou Global, acting through its alter egos Hi2 Manager, Hi2 GP and J. Wang, breached the terms of the Platform Notes by failing to make the required payments of principal and interest on the respective maturity dates.

106.    As a direct and proximate result of Defendants' breach of contract, Plaintiff has suffered damages, including the loss of her principal investments and the agreed-upon interest.

107.    By reason of the foregoing, Plaintiff is entitled to a judgment against Haitou Global, Hi2 Manager, and J. Wang, jointly and severally, for compensatory damages in an amount to be determined at trial, but in excess of $1.4 million, representing the principal amount of the Platform Notes and applicable interest.

**Sixth Claim for Relief**
**Breach of Contract**
**(in the Alternative against Carloha)**

108.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

109.    Carloha entered into three Promissory Notes with Haitou Global for the purpose of securing the repayment of funds provided under the three Platform Notes purchased by Plaintiff.

110.    Plaintiff is an intended third-party beneficiary of these Promissory Notes, as the funds loaned to Carloha were derived from Plaintiff's investments in the Platform Notes, and the repayment of these Promissory Notes was intended to benefit Plaintiff directly.

111.    Carloha breached the terms of the Promissory Notes by failing to make the required payments to Haitou Global, which were to be used to repay Plaintiff's investments under the Platform Notes.

112.    Hi2 and J. Wang have represented that no repayments were made by Carloha to Haitou Global under the Promissory Notes. If this statement is true, Carloha has failed to fulfill its obligations, as the repayments were intended for the benefit of Plaintiff.

113.    As a direct and proximate result of Carloha's breach of the Promissory Notes, Plaintiff has suffered damages, including the loss of her principal investments and applicable interest.

114.    By reason of the foregoing, Plaintiff is entitled to a judgment against Carloha for compensatory damages in an amount to be determined at trial, but in excess of $1.4 million, representing the principal amount of the Platform Notes and applicable interest.

**Seventh Claim for Relief**
**Unjust Enrichment**
**(against Carloha)**

115.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

116.    Carloha received the $1.4 million in principal from Plaintiff's investments in the Platform Notes, which were intended as loans to Carloha.

117.    Carloha knowingly accepted and retained these funds without repaying them.

118.    Carloha has been unjustly enriched at Plaintiff's expense.

119.    It would be inequitable for Carloha to retain the benefits of these funds without compensating Plaintiff.

120.    As a result of Carloha's unjust enrichment, Plaintiff is entitled to recover, in equity, an amount representing the benefits unjustly retained by Carloha, in an amount to be determined at trial, but in excess of $1.4 million.

**Eighth Claim for Relief**
**Controlling Person Liability Under Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a))**
**(against J. Wang)**

121.    Plaintiff repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

122.    At all relevant times, J. Wang was a controlling person of Haitou Global, Hi2 GP, and Hi2 Manager within the meaning of Section 20(a) of the Exchange Act (15 U.S.C. § 78t(a)).

123.    As the founder, Chief Executive Officer, and Manager of the Hi2, J. Wang had direct and significant control over their operations, management, and decision-making processes, including the issuance of the Platform Notes and the dissemination of false and misleading statements regarding those investments to Plaintiff and other investors.

124.    J. Wang exercised control over all aspects of the Hi2's actions, including the management of investor funds, the creation and approval of Marketing Materials, Offering Materials, and representations made to investors about the safety and security of the Platform Notes.

125.    J. Wang had the power to direct or cause the direction of the management and policies of the Hi2 entities, including decisions related to the misrepresentation of key facts to investors. J. Wang had actual knowledge of the misrepresentation Hi2 was providing to investors. This included, but was not limited to:

a.    Misrepresenting that the Platform Notes were registered with the SEC;

b.    Misrepresenting that the funds raised would be maintained separately under each corresponding "Series LLC" when, in fact, no such structure existed; and

      c.      Failing to disclose the actual risks associated with the investments and the mismanagement of investor funds.

126.    As described herein, Hi2, under J. Wang's control, violated Section 10(b) of the Securities Exchange Act and Rule 10b-5 by making materially false and misleading statements to Plaintiff and other investors, inducing them to invest in the Platform Notes.

127.    J. Wang did not act in good faith and directly or indirectly induced the acts constituting the securities violations.  J. Wang's knowing participation in the fraud and his deliberate mismanagement of investor funds preclude any good faith defense.

128.    As a direct and proximate result of the securities violations committed by Hi2, which J. Wang controlled, Plaintiff has suffered significant damages, including the loss of her principal investments and applicable interest.

129.    By reason of the foregoing, Plaintiff is entitled to a judgment against J. Wang, jointly and severally with Hi2, for compensatory damages in an amount to be determined at trial, but in excess of $1.4 million, plus punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in her favor and against Defendants as follows:

(a)    On the First Claim for Relief, award Plaintiff compensatory damages against Hi2 and J. Wang, jointly and severally, in an amount to be determined at trial, in addition to  punitive damages;

(b)    On the Second Claim for Relief, awarding Plaintiff compensatory damages against Carloha and L. Long, jointly and severally, in an amount to be determined at trial, in addition to punitive damages;

(c)     On the Third Claim for Relief, awarding Plaintiff compensatory damages against Hi2 and J. Wang, jointly and severally, in an amount to be determined at trial, but in excess of $1.4 million, plus interest, in addition to punitive damages in an amount to be determined at trial;

(d)     On the Fourth Claim for Relief, awarding Plaintiff compensatory damages against Carloha and L. Long, jointly and severally, in addition to punitive damages, in an amount to be determined at trial;

(e)     On the Fifth Claim for Relief, awarding Plaintiff compensatory damages against Hi2 and J. Wang, jointly and severally, in an amount to be determined at trial, but in excess of $1.4 million, and interest thereon;

(f)     On the Sixth Claim for Relief, award Plaintiff compensatory damages against Carloha, in an amount to be determined at trial, but in excess of $1.4 million, plus interest;

(g)     On the Seventh Claim for Relief, awarding Plaintiff equitable relief against Carloha in the amount by which Carloha was unjustly enriched, in an amount to be determined at trial, but in excess of $1.4 million, plus interest;

(h)     On the Eighth Claim for Relief, awarding Plaintiff compensatory damages against J. Wang, jointly and severally with the Hi2, in an amount to be determined at trial, but in excess of $1.4 million, plus punitive damages;

(i)     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees; and

(j)     Granting such other and further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues so triable pursuant to Rule 38 of the

Federal Rules of Civil Procedure.


Dated:  New York, New York
        October 14, 2024

                                        ALLEGAERT BERGER & VOGEL LLP


                                        By:  _____s/ Bianca Lin_____

                                        David A. Berger
                                        Bianca Lin
                                        111 Broadway, 20th Floor
                                        New York, New York 10006
                                        (212) 571-0550
                                        dberger@abv.com
                                        blin@abv.com

                                        *Attorneys for Plaintiff Li Wang*