```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
LI WANG,                                 :
                                         :
                         Plaintiff,      :    24cv7781 (DLC)
                                         :
              -v-                        :    OPINION AND
                                         :        ORDER
HAITOU GLOBAL (CAYMAN) INC., et al.,     :
                                         :
                         Defendants.     :
                                         :
---------------------------------------- X
```

APPEARANCES:

For plaintiff:
David Adam Berger
Bianca Lin
Allegaert Berger & Vogel LLP
111 Broadway, 20th Floor
New York, NY 10006

For defendants Haitou Global (Cayman) Inc., Hi2 Investment Management, LLC, Hi2 GP LLC, and Jinlong (Jerry) Wang:
Serena Yang
AFN Law PLLC
506 2nd Ave, Suite 1400
Seattle, WA 98104

For defendants Carloha Inc. and Liang Long:
Sylvia Pihui Tsai
Law offices of Fuqiang Zhang, P.C.
275 Madison Ave, Suite 903
New York, NY 10016


DENISE COTE, District Judge:

Plaintiff Li Wang invested money with Haitou Global (Cayman) Inc. ("Haitou Global"). She has sued Haitou Global, related entities, and their manager, to recover her investment.

Haitou Global has moved to compel arbitration and, for the following reasons, its motion is granted. This action is stayed pending completion of the arbitration.

## Background

The following facts are drawn from the complaint, each party's pleadings, and the evidence submitted by the parties in connection with their motions. This Opinion summarizes only those facts relevant to the motions.

Plaintiff Li Wang invested $1.4 million in three "Platform Notes" issued by Haitou Global. The proceeds from Platform Notes in which Wang invested were used to make loans to defendant Carloha Inc. ("Carloha"), a used-car retailer. Defendant Liang Long is the principal and Chief Executive Officer of Carloha (collectively, "Carloha Defendants").

Plaintiff's investment in the Platform Notes was made pursuant to three "Subscription Agreements" that Wang signed with Haitou Global. Each Subscription Agreement contains an identical arbitration provision, which states:

> Either party may, at its sole election, require that the sole and exclusive forum and remedy for resolution of a Claim . . . be final and binding arbitration.

The Subscription Agreements define a "claim" to include any "controversy involving" the plaintiff and Haitou Global or any persons "connected with" Haitou Global.

2

Wang filed this action on October 14, 2024 against Haitou Global and three defendants related to Haitou Global. Defendant Haitou Global and its affiliate Hi2 GP LLC ("Hi2 GP") each operate a series of private investment funds, which lend capital to downstream borrowers. Defendant Hi2 Investment Management, LLC ("Hi2 Investment") serves as the investment advisor for each of the Haitou Global and Hi2 GP funds. And defendant Jinlong (Jerry) Wang ("J. Wang") is the manager of Haitou Global, Hi2 GP, and Hi2 Investment. Hi2 GP, Hi2 Investment, and J. Wang will be referred to as the "Hi2 Defendants." The plaintiff alleges, in short, that the Platform Notes matured in May and June 2024 but that she has yet to receive full repayment. Wang asserts claims against Haitou Global and the Hi2 Defendants under §§ 10(b) and 20(a) of the Securities and Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), as well as state law claims for fraudulent inducement and breach of contract.

Wang has also sued the Carloha Defendants, asserting claims against them for unjust enrichment, breach of contract, and for aiding and abetting Haitou Global and the Hi2 Defendants in securities fraud and fraudulent inducement. Wang alleges that between June and August 2024 Carloha assured Wang that, while Carloha still owed Haitou Global money on its loans, it would repay the loans in short order. In October 2024, Wang alleges,

3

Carloha repaid $100,000 to Haitou Global, which was then transferred to her. Wang asserts, however, that she has received no further repayment.

On November 29, Haitou Global moved to compel arbitration of Wang's claims asserted against it. Concurrently, the Hi2 Defendants moved to stay the case pending the outcome of arbitration between Wang and Haitou Global. Also on November 29, the Carloha Defendants filed an answer and asserted crossclaims against Haitou Global, Hi2 GP, and Hi2 Investment. The Carloha Defendants amended their answer and crossclaims on December 19. In their amended crossclaims for common law indemnification and unjust enrichment, the Carloha Defendants allege that they paid back all of the loans issued by Haitou Global, and that any losses the plaintiff suffered were due to mismanagement by Haitou Global, Hi2 GP, and Hi2 Investment. Haitou Global and the Hi2 Defendants, for their part, declare that Carloha has repaid only $100,000 on its loans, which was immediately disbursed to the plaintiff.

On December 19, pursuant to a stipulation, the Court ordered that Carloha's crossclaims against defendants Haitou Global, Hi2 GP, and Hi2 Investment be arbitrated. The Court further ordered that Long's crossclaims against the same defendants be stayed pending the outcome of that arbitration.

4

On December 20, Wang opposed Haitou Global's motion to compel arbitration and, in the alternative, moved to compel arbitration of all her claims against all of the defendants. The last of these motions became fully submitted on January 17, 2025.

## Discussion

I.  Haitou Global's Motion to Compel Arbitration

Motions to compel arbitration "are governed by a standard similar to that applicable for a motion for summary judgment." Barrows v. Brinker Rest. Corp., 36 F.4th 45, 49 (2d Cir. 2022) (citation omitted). Accordingly, courts consider "all relevant, admissible evidence submitted by the parties and contained in pleadings," including affidavits, and draw all reasonable inferences in favor of the non-moving party. Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted). "Where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [courts] may rule on the basis of that legal issue and avoid the need for further court proceedings." Id. (citation omitted).

The Federal Arbitration Act ("FAA") mandates that agreements to arbitrate are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA establishes a "liberal federal policy favoring arbitration agreements," requiring

5

courts "rigorously to enforce arbitration agreements according to their terms." Epic Sys. Corp. v. Lewis, 584 U.S. 497, 505 (2018) (citation omitted). Thus, "a court must hold a party to its arbitration contract just as the court would to any other kind." Morgan v. Sundance, Inc., 596 U.S. 411, 418 (2022). On the other hand, courts "will not enforce arbitration unless and until it is determined that an agreement [to arbitrate] exists." Soliman v. Subway Franchisee Advertising Fund Trust, Ltd., 999 F.3d 828, 834 (2d Cir. 2021).

Where an agreement to arbitrate exists, "courts presume that the parties intend courts, not arbitrators, to decide disputes about 'arbitrability,'" such as "whether the parties are bound by a given arbitration clause, or whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." Olin Holdings Ltd. v. State, 73 F.4th 92, 105 (2d Cir. 2023) (citation omitted). Courts must "independently decide those issues unless the record supplies clear and unmistakable evidence that the parties agreed to submit the issue to arbitration." Id. (citation omitted).

The Subscription Agreements include a binding agreement to arbitrate. Moreover, Wang's statutory and common law claims against Haitou Global fall within the scope of the arbitration clause.

6

In resisting arbitration of her claims, Wang argues that the arbitration clause is only enforceable when a party makes an arbitration demand, which Haitou Global has not yet done. Wang misconstrues the arbitration provision. It explains that either party has the right, "at its sole election, [to] <u>require</u>" arbitration of a claim that falls within its scope. (Emphasis supplied.) That is what Haitou Global has done through its motion to compel arbitration.[1]

Wang further argues that Haitou Global's motion to compel arbitration is defective because Haitou Global has not moved to compel arbitration of the plaintiff's claims against all of the defendants. Not so. Neither the Hi2 Defendants nor the Carloha Defendants are parties to the Subscription Agreements. Arbitration is a matter of contract, and a signatory "may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party." <u>MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC</u>, 268 F.3d 58, 62 (2d Cir. 2001). Thus, Haitou Global's motion to compel arbitration of the claims asserted against it is granted.

---

[1] Wang's reliance on cases in which there was a condition precedent to arbitration is misplaced. <u>See</u> <u>Weiss v. Am. Express Nat'l Bank</u>, No. 19cv4720 (JPO), 2020 WL 71085, at *2 (S.D.N.Y. Jan. 7, 2020) (notice of claim required); <u>Marcus v. Frome</u>, 275 F. Supp. 2d 496, 505 (S.D.N.Y. 2003) (arbitration demand required).

Haitou Global will be required to commence arbitration within thirty days if it seeks enforcement of the arbitration clause in its agreement with Wang.

II. Wang's Cross-Motion to Compel Arbitration

In the alternative, Wang cross-moves to compel the arbitration of all of her claims against all the defendants. There are limited bases upon which a signatory may "enforce an arbitration agreement against a non-signatory." Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003) (citation omitted). These are: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." Id. Wang relies on only the final two theories. Neither theory requires the enforcement of the arbitration agreement against the Hi2 or Carloha Defendants.

A.  Veil Piercing

The piercing of the corporate veil may occur under New York law where 1) "the owner [of a company] exercised complete domination over the corporation with respect to the transaction at issue," and 2) "such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." MAG Portfolio, 268 F.3d at 63 (citation omitted). Whether veil-piercing is appropriate is a "fact specific" inquiry, and courts may consider many factors, including:

8

> (1) disregard of corporate formalities; (2) inadequate
> capitalization; (3) intermingling of funds; (4)
> overlap in ownership, officers, directors, and
> personnel; (5) common office space, address and
> telephone numbers of corporate entities; (6) the
> degree of discretion shown by the allegedly dominated
> corporation; (7) whether the dealings between the
> entities are at arms length; (8) whether the
> corporations are treated as independent profit
> centers; (9) payment or guarantee of the corporation's
> debts by the dominating entity, and (10) intermingling
> of property between the entities.

Id. (citation omitted). Even where several factors favor piercing the corporate veil, "[c]ourts must be extremely reluctant to disregard corporate form, and should do so only when the corporation <u>primarily</u> transacts the business of the dominating interest rather than its own." <u>United States v. Funds Held in the Name or for the Benefit of Wetterer</u>, 210 F.3d 96, 106 (2d Cir. 2000).

Wang contends that the Hi2 Defendants and Haitou Global are alter egos and must all be compelled to arbitrate her claims against them. In support, she argues that all the corporate entities -- Haitou Global, Hi2 Investment, and Hi2 GP -- are controlled by J. Wang, and that the entities share the same office space and communicate on the same online platform, "WeChat." She additionally asserts that J. Wang instructed her to deposit her investment funds not with Haitou Global but in "Hi2 GP's bank account in New York." Finally, Wang alleges that J. Wang admitted to her that Haitou Global's funds "were not

9

segregated" but had been "pooled together with other investments and were all in 'one pot.'"  The result, J. Wang allegedly told the plaintiff, was that when one downstream borrower "took Hi2's money and disappeared," Wang's investments via the Platform Notes were at risk of loss.

These allegations fail to establish that J. Wang exercised complete domination over the corporate entities with respect to the transactions underlying this litigation.  J. Wang has offered evidence that Haitou Global, Hi2 GP, and Hi2 Investment each operate independently, maintain separate financial records, and are independently audited.

There is no evidence that there was a disregard of corporate formalities, inadequate capitalization, or the use of funds for personal matters by J. Wang.  Nor has the plaintiff shown that Haitou Global primarily transacted the business of its co-defendants rather than its own.

The plaintiff alleges that the Hi2 Defendants and Haitou Global kept their funds in "one pot."  But even crediting this allegation, the record does not permit a finding that J. Wang so dominated Haitou Global and the related entities such that arbitration against him and the other Hi2 Defendants is compelled under an alter-ego theory.  See Am. Fuel Corp. v. Utah Energy Dev. Co., 122 F.3d 130, 134-35 (2d Cir. 1997) (failure to

observe corporate formalities, use of shared office space and letterhead, and lack of capital in the subsidiary were insufficient to show domination as a matter of law); see also Thomson-CSF, S.A. v. Am. Arb. Ass'n, 64 F.3d 773, 778 (2d Cir. 1995) (similar). The evidence of domination is insufficient as a matter of law to compel arbitration against a non-signatory.

B. Estoppel

As to estoppel, a party that "knowingly accepted the benefits of an agreement with an arbitration clause, even without signing the agreement . . . may be bound by the arbitration clause" if those benefits are "direct." MAG Portfolio, 268 F.3d at 61 (citation omitted). That is, the benefits must flow directly from the agreement. Id. Where the "nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself," a nonsignatory is not estopped from avoiding arbitration. Id.

The plaintiff has not shown that either the Hi2 Defendants or the Carloha Defendants received a direct benefit from the plaintiff's Subscription Agreements. Accordingly, they cannot be estopped from avoiding arbitration.

Wang argues that the Hi2 Defendants benefited directly because they facilitated Haitou Global's receipt of her funds

and failed to manage those funds properly. She similarly argues that the Carloha Defendants received a direct benefit from Haitou Global because they were downstream borrowers and received Wang's funds in the form of loans.

A non-signatory must be more than related to or agents of the signatory for a court to compel arbitration. See id. at 62. The Carloha Defendants derived only indirect benefits from Wang's contract with Haitou Global. The Hi2 Defendants are closely related to Haitou Global, but the plaintiff has not shown that they exploited the Agreements for their own benefit. Accordingly, the plaintiff's motion to compel arbitration against the Hi2 Defendants and the Carloha Defendants is denied.

III. Stay

Where only some claims in an action are arbitrable, "[t]he decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket." Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 856 (2d Cir. 1987). In such circumstances, it is appropriate "to grant a stay where the pending proceeding is an arbitration in which issues involved in the case may be determined." Sierra Rutile Ltd. v. Katz, 937 F.2d 743, 750 (2d Cir. 1991) (citation omitted). A court thus considers "factors such as the desirability of avoiding piecemeal litigation and

the degree to which the cases necessitate duplication of discovery or issue resolution." Maritima de Ecologia, S.A. de C.V. v. Sealion Shipping Ltd., No. 10cv8134 (DLC), 2011 WL 1465744, at *5 (S.D.N.Y. Apr. 15, 2011) (citation omitted).

A discretionary stay of the case is warranted.  Two arbitrations will be proceeding to address issues raised in this Court: 1) the arbitration of the plaintiff's claims against Haitou Global; 2) the arbitration of Carloha's crossclaims against Haitou Global and the Hi2 Defendants.  The remaining claims are the plaintiff's claims against the parties with which she had no direct contractual relationship, i.e., all the defendants except Haitou Global.  Permitting the plaintiff's claims against the Hi2 and the Carloha Defendants to proceed during the arbitration of her claims against Haitou Global would negatively impact Haitou Global's interests and be an inefficient use of litigation resources.

Wang failed to advance any argument in her opposition brief as to why, having granted Haitou Global's motion to compel, this Court should not stay the balance of proceedings pending arbitration.  Nevertheless, in her reply brief, served as part of her own cross-motion to compel arbitration, she contends that the case should not be stayed because the Hi2 Defendants have not shown that the arbitration will not result in delay or cause

13

Wang undue hardship. Even considering this argument on the merits, there is no evidence that the arbitration will not "conclude within a reasonable time" or that Wang will suffer "undue hardship." <u>Sierra Rutile Ltd.</u>, 937 F.2d at 750. Haitou Global moved to compel arbitration immediately after Wang initiated this litigation.

## **Conclusion**

Haitou Global's November 29, 2024 motion to compel arbitration and the Hi2 Defendants' November 29 motion to stay the case pending arbitration of the plaintiff's claims against Haitou Global are granted. Wang's December 20 cross-motion to compel arbitration against all the defendants is denied. This action is stayed. If Haitou Global does not commence an arbitration of Wang's claims against it within 30 days, Wang may apply to lift this stay.

Dated:    New York, New York
          February 25, 2025

                                        _____
                                              DENISE COTE
                                        United States District Judge